John T. WITHEROW

v.

The FIRESTONE TIRE & RUBBER COMPANY, a corporation, Appellant.

No. 75–1514.

United States Court of Appeals, Third Circuit.

Argued Nov. 10, 1975.

Decided Jan. 26, 1976.

Edward G. O'Connor, Frederick J. Rerko, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellant.

Frederick J. Francis, Jerome J. Purcell, Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellee.

Before ALDISERT, HUNTER and GARTH, Circuit Judges.

1. *Rule 4(h) Amendment.* At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

2. *§ 1448.* *Process after removal*

In all cases removed from any State court to any district court of the United States in which any one or more of the defendants

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The issue in this diversity case is whether defective service of process which resulted in failure to obtain jurisdiction over defendant in the state court within the period of the statute of limitations may be cured on removal to federal court by the application of F.R. Civ.P. 4(h)[1] or 28 U.S.C. § 1448.[2] The district court ruled in favor of the plaintiff and certified the question for appeal pursuant to 28 U.S.C. § 1292(b). We vacate the order appealed from and remand to the district court with instructions to dismiss both the original and the amended complaint.

### I.

Plaintiff Witherow was injured in Blandburg, Pennsylvania, on April 17, 1970, when a Firestone tire he was installing exploded.

Pennsylvania has a two-year statute of limitations for "injury wrongfully done to the person," 12 P.S. § 34, which beings to run from the time the injury was done. On April 10, 1972—seven days prior to the running of the statute—plaintiff filed a praecipe for a writ of summons in trespass in the Court of Common Pleas of Clearfield County, Pennsylvania. The filing of the praecipe was an authorized mode of commencing the action, Rule 1007, Pa.R.Civ.P., and it tolled the statute of limitations, but only for a period of two years from the date of the issuance of the writ. *Marucci v. Lippman*, 406 Pa. 283, 177 A.2d 616 (1962); *Zarlinsky v. Laudenslager*, 402 Pa. 290, 167 A.2d 317 (1961). Rule

has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case. June 25, 1948, c. 646, 62 Stat. 940.

1009(a) Pa.R.Civ.P. requires that the writ be served within 30 days of issuance, but the writ may be reissued pursuant to Rule 1010 any number of times.

The Sheriff's return, filed 18 months later, showed that he had served the writ on April 17, 1972, on the Assistant Manager of Thompson & Buck, a Firestone dealer store in Clearfield, Pennsylvania. Because Thompson & Buck, although a Firestone dealer, was an independent business the service was legally ineffective. Rule 2180 Pa.R.Civ.P. In addition, Firestone never received the summons. Almost two years later, on March 28, 1974, plaintiff filed a complaint in trespass which again was promptly served on Thompson & Buck, this time upon the owner of the dealership who immediately forwarded the complaint to Firestone's legal department.

Firestone had been aware of the claim, though not the lawsuit, since March, 1972 when plaintiff's attorney had notified the company at its Akron headquarters. On April 18, 1974, shortly after receipt of the forwarded complaint, Firestone filed a petition for removal based upon diversity of citizenship to the United States District Court for the Western District of Pennsylvania.

In the district court, Firestone moved to dismiss raising, *inter alia*, insufficiency of service of process and the bar of the statute of limitations. Plaintiff moved to perfect or amend service of process pursuant to Rule 4(h) of the F.R. Civ.P. and 28 U.S.C. § 1448. Plaintiff also moved to file an amended complaint adding a claim of breach of warranty.

The district court denied Firestone's motion and granted the plaintiff's motion to perfect or amend service of process:

> Therefore, we believe that under these particular facts, when the Defendant actually received the proper pleading within the statutory period, albeit improperly, and the Plaintiff, when first notified of the defects of its service, immediately moved to perfect under Fed.R.Civ.P. 4(h), fairness dictates that the motion to Perfect or Amend Service of Process must be granted under the provisions of 28 U.S.C. § 1448 and Rule 4(h) and 4(d)(3), Fed.R.Civ.P.

App. at 98a. The district court also granted plaintiff's motion to file an amended complaint, reasoning that Rule 15(c) F.R.Civ.P.[3] applied and allowed the amendment to relate back to the filing of the complaint on March 28, 1974, thereby satisfying Pennsylvania's four-year breach of warranty statute of limitations, 12A P.S. § 2–725.

The district court certified its opinion and order for appeal pursuant to 28 U.S.C. § 1292(b). We permitted the appeal.

## II.

In evaluating defendant Firestone's claim that the action was barred by the Pennsylvania statute of limitations, the district court relied primarily on *Anderson v. Bernard Realty Sales Co.*, 230 Pa. Super. 21, 329 A.2d 852 (1974). *Anderson* concerned the question "whether the statute of limitations is tolled when the plaintiff files a praecipe for a writ of

---

**3.** *Rule 15(c) Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the

action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. . . .

summons, but fails to deliver the writ to the sheriff for service." *Ibid.* at 22, 329 A.2d at 853. The answer given was affirmative. The district court described this case as addressing a "similar" problem to the problem under consideration. Because the district court relied on this case, controlling a *similar* problem, instead of relying on *Yefko v. Ochs,* 437 Pa. 233, 263 A.2d 416 (1970), which controls the *actual* problem, we cannot agree with its conclusion that the action was not time-barred under Pennsylvania law.

■ Under Pennsylvania law in effect at the time[4] of these proceedings, an action at law could be commenced by filing a praecipe for a writ of summons or a complaint. However, if commenced by summons, the complaint could not serve as process. "Where an action is started by summons, the complaint is only the required pleading with none of the characteristics of process; service of the complaint in such a case cannot confer jurisdiction." *Yefko, supra,* 437 Pa. at 237, 263 A.2d at 418. Accordingly, a litigant who commenced his action by summons could only acquire jurisdiction by proper and timely service of the writ. The writ had to be served within 30 days of its issuance; it could be reissued any number of times, but it could not be reissued after the period of the applicable statute of limitations, *e. g.,* tort, contract, had run from the last valid reissuance.

■ Plaintiff's original writ of summons was issued on April 10, 1972. The applicable statute of limitations was two years. Accordingly, he had until April 10, 1974, to seek reissuance. He did not seek reissuance. He did not secure proper service of the writ. Filing and service of the complaint, even if service had been proper, was ineffective. *Yefko* is "on all fours":

Thus in the case at hand the service of [appellee's] complaint did not erase the need for timely service of [appellee's] original writ or the alternative requirement that the writ be reissued within two years to prevent its lapse. Having elected to initiate [his] action by filing a praecipe for a writ of summons, and having thereafter failed either to secure timely service of the writ or to reissue the writ within the required two year period [appellee] was barred by the statute of limitations from proceeding with [his] cause of action.

*Ibid.,* 263 A.2d at 418. Accordingly, we conclude that had this action remained in the state court, it would have been time-barred as of April 10, 1974. It was jurisprudentially dead. It remains only to consider whether the subsequent removal to the federal court on April 18, 1974, could breathe new life into it.

### III.

Because federal jurisdiction here is based upon diversity of citizenship, and because we must choose whether state or federal law controls, we are conscious of the demanding presence of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We eschew any mechanical interpretation of that case or its successors and hearken, instead, to Chief Justice Warren's reminder that "choices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the *Erie* rule." *Hanna v. Plumer,* 380 U.S. 460, 467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965). What follows is a summary of those policies.

The decision in *Erie* to change prior practice and to apply the substantive law of the forum state and federal procedural law in a diversity case reflected essen-

---

4. Pennsylvania law has since been changed. A June 28, 1974, amendment to Rule 1010 Pa. R.Civ.P. now permits the filing of a complaint and service thereof without reissuance of the writ of summons. The district court observed, and we agree, that this rule change cannot apply to this case. *See* Rule 152 Pa.R.Civ.P.; *Stoltzfus v. Haus,* 234 Pa.Super. 46, 334 A.2d 738, 739, n. 1 (1975); *Trinity Area School District v. Dickson,* 223 Pa.Super. 546, 551, 302 A.2d 481, 484 (1973).

tially three policy considerations. First, the prior practice resulted in forum shopping because federal courts could and did apply different substantive law from state courts in the same state. *See, e. g., Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928). The decision to require that federal courts apply state substantive law in diversity cases represented a preference for vertical uniformity of substantive law within each state over horizontal uniformity among federal courts nationwide. *See* Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693, 715 (1974). After *Erie,* a plaintiff could conceivably shop among federal courts for favorable substantive law, but, at least, he would be inconvenienced by travel to another state and, in many cases, he would face jurisdictional and other problems. The second policy consideration implicit in *Erie* was more fundamental: the application of disparate laws to identical claims depending solely on the diversity of citizenship *vel non* of the parties "introduced grave discrimination by non-citizens against citizens" and "rendered impossible equal protection of the law." *Erie, supra,* 304 U.S. at 74–75, 58 S.Ct. at 820. In a sense, the conceptual basis of diversity jurisdiction itself

discriminates in favor of non-citizens on the theory that, otherwise, they may be discriminated against; and it is premised on the assumption that a non-citizen may obtain a different result in federal court than in state court.[5] Nevertheless, to apply a different rule of law to the non-citizen's case would be contrary to the fundamental notion—since *Erie,* at least—that the diversity jurisdiction simply provides an impartial forum, not a different set of legal rules. Finally, *Erie* reflected judicial concern over the allocation of lawmaking authority between state and federal governments. *Erie,* in 1938, considered itself a constitutional decision. *Ibid.* at 79–80, 58 S.Ct. 817. Whether it ought to be so regarded has attracted diverse views[6] among the most respectable commentators. See authorities collected in C. Wright, Law of Federal Courts § 56 (2d ed. 1970). But certainly a concern for states' policies and prerogatives can never be out of place in a system of coordinate sovereignties—as a matter of prudence and. comity if not as a matter of constitutional law. Even *Hanna,* while making a vigorous case for the validity of the Federal Rules of Civil Procedure, noted that a court "need not wholly blind itself to the degree to which [a federal] Rule makes the character and result of the federal litigation stray from

**5.** " . . . James Madison, one of the strongest friends of diversity jurisdiction, . . . [stated] on one occasion:

As to its cognizance of disputes between citizens of different states, I will not say it is a matter of such importance. Perhaps it might be left to the state courts. But I sincerely believe this provision will be rather salutary, than otherwise. It may happen that a strong prejudice may arise in some states, against the citizens of others, who may have claims against them. We know what tardy, and even defective administration of justice, has happened in some states. A citizen of another state might not chance to get justice in a state court, and at all events he might think himself injured.

Madison's reasoning represents the traditional, and most often cited, explanation of the purpose of diversity jurisdiction—the fear that state courts would be prejudiced against out-of-state litigants." C. Wright, A. Miller, & E. Cooper, 13 Federal Practice and Procedure § 3601 (1975) (footnotes omitted). For other

expressions of other fears see authorities collected in § 3601.

**6.** *See, e.g.,* Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693, 698 (1974) ("Where a nonstatutory rule is involved, the Constitution necessarily remains in the background, but is functionally irrelevant because the applicable statutes are significantly more protective of the prerogatives of state law"). *But see, e.g.,* Mishkin, *Some Further Last Words on Erie— The Thread,* 87 Harv.L.Rev. 1682 (1974) ("I maintain that the Constitution bears not only on Congressional power but also imposes a distinctive, independently significant limit on the authority of the federal courts to displace state law").

The "applicable statutes" referred to are the Rules of Decision Act, n.7, *infra,* and the Rules Enabling Act, 28 U.S.C. § 2072. The latter authorizes the Supreme Court to prescribe rules of "practice and procedure" for the federal courts, which rules "shall not abridge, enlarge or modify any substantive right."

the course it would follow in state courts." *Hanna v. Plumer,* 380 U.S. at 473, 85 S.Ct. at 1145.

Keeping in mind the basic policy considerations that inform the choice of state or federal law in a diversity case, we proceed to a more particular analysis of the laws, state and federal, relied on in this case.

### A.

■ Appellant relies on Pennsylvania's statute of limitations and, especially, on the judicially created requirement of seeking reissuance of the writ where service has not been timely effected.[7] The central importance in this case of Pennsylvania's statute of limitations is beyond peradventure and, while we find no implication of improper forum shopping here, we nevertheless feel compelled to observe that variant statutes of limitation, perhaps more than any other kind of disparity, present opportunity for the kind of forum shopping *Erie* intended to preclude. *See Iovino v. Waterson,* 274 F.2d 41, 48 n.5 (2d Cir. 1959), *cert. denied,* 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960). Statutes of limitation present a peculiarly difficult case for *Erie* substance-procedure characterization inasmuch as they undoubtedly embody both substantive and procedural policies. We are not, however, without authoritative guidance:

[T]he question is not whether a statute of limitations is deemed a matter of

"procedure" in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?

*Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 560 (1945) (Frankfurter, J.). The Court in *Guaranty Trust* held that, when no recovery could be had on the claim in the New York state courts because the action was barred by the statute of limitations, a federal court sitting in New York similarly could not take cognizance of the suit.

Four years later, in *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), the Court again confronted the statute of limitations issue in a diversity case. *Ragan* involved not the period of the statute, but the tolling of it—in that sense, *Ragan* seems particularly relevant to our inquiry. Plaintiff in *Ragan* relied on F.R.Civ.P. 3, claiming that he tolled the applicable Kansas statute of limitations when he commenced his action in federal court by filing his complaint. Defendant relied on the Kansas rule that

---

**7.** Appellee accuses appellant of "confusing" Pennsylvania's statute of limitations with its decisional authorities concerning the reissuance of writs. Appellee's Brief at 5. It is, of course, immaterial for *Erie* purposes whether state law is declared by the legislature or the courts. *Erie* specifically overruled *Swift v. Tyson,* 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), which had held that "decisions of courts, . . are, at most, only evidence of what the laws are, and are not, of themselves, laws." *See Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1835, 31 L.Ed.2d 712 (1971). In fact, the *Erie* decision itself concerned the question whether federal courts were bound to apply state judge-made law. Even at that time federal courts were bound to apply state statutes in diversity cases pursuant to the Rules of

Decision Act, 28 U.S.C. § 1652. Further, admitting that the requirement concerning the reissuance of writs is not a "statute", we nevertheless see no usefulness in semantic argument whether it ought to be characterized as a statute of limitations, or as a judicially-created adjunct to a statute of limitations, or as something else. The policy is the same. In any event, the Supreme Court of Pennsylvania in *Yefko, supra,* stated that, having "failed either to secure timely service of the writ or to reissue the writ within the required two year period, appellant was barred by the statute of limitations from proceeding with her cause of action." 437 Pa. at 237, 263 A.2d at 418–19. We refer to the requirement as a statute of limitations.

the statute was tolled only upon service of the summons, and the Court agreed: "If recovery could not be had in the state court, it should be denied in the federal court." *Ibid.* at 532.

Ragan[8] and *Guaranty Trust* emphasize the importance of a state's policy favoring repose embodied in its statute of limitations, and remind us of the inequities of allowing an action to proceed in federal court that would be time-barred in state court. These are compelling considerations. "In essence, the intent of [the *Erie*] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result." *Guaranty Trust Co. v. York*, 326 U.S. at 109, 65 S.Ct. at 1470.

While we avoid mechanical application of the "outcome-determinative" test, or any other single test, we observe that nothing could be more "substantial" than to allow an action to proceed in federal court which would be time-barred in state court. Moreover, to refuse to give effect to Pennsylvania's statute of limitations would not only frustrate the state's policy of repose embodied in that law but would, in the curious posture of this case, penalize the non-citizen defendant for invoking the federal diversity jurisdiction.

**B.**

Appellee relies on Rule 4(h) of the F.R.Civ.P. and on 28 U.S.C. § 1448 to support his argument that he should be allowed to "amend or perfect" process and proceed with the case. We have no hesitancy in concluding that Rule 4(h) does not apply. Rule 4(h) provides that "the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." In granting plaintiff's motion to amend or perfect process, the district court stated: "[Our] primary rationale . . . was that if Firestone had actual notice of the proceedings, it would not be prejudiced by permitting Witherow to perfect a disputed improper service by applying the provisions of Rule 4(h) and Rule 4(d)(3) [relating to the manner of serving corporations, partnerships, and associations]." App. at 91a.[9] Conceding that Firestone had actual notice, we nevertheless cannot accept this approach to federal or state rules of service. Whatever relevance "notice" may have in a due process context, the controlling point is whether service was achieved under the substantive law of both agency and service of process. Thus, in *Gottlieb v. Sandia American Corp.*, 452 F.2d 510, 513 (3d Cir.), *cert. denied*, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971), we held as improper service upon the corporation, actual service on a co-defendant, who was the corporation's controlling stockholder—but not an "officer, a managing or general agent, or . . . agent authorized by appointment or by law to receive service of process"—and who had knowledge of the business transaction that was the subject of the law suit.

---

**8.** We recognize that the continuing vitality of the particular rule of *Ragan* is not free from doubt. *See Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598, 605 (2d Cir. 1968) (collecting cases on both sides of the issue). Insofar as we rely on that, or any other, case, we rely on the *principles* embodied in that decision. We have found no *rule* controlling our decision.

Pound, *Hierarchy of Sources and Forms in Different Systems of Law*, 7 Tul.L.Rev. 475, 482–84 (1933).

**9.** We consider it no longer "disputed" that service was improper. *See* App. at 95a, 98a (District Court Opinion and Order).

Had we deemed notice of the pending law suit a relevant factor, we obviously would have reached a contrary result.

Assuming, arguendo, that Rule 4(h) applies, we have serious problems with the conclusion that defendant is not prejudiced by the reinstatement in federal court of a claim that was time-barred in the state court. But, more fundamentally, we do not believe that the Rule applies. By its terms, it allows amendment only, of "process or proof of service thereof"; it simply does not speak to the question of defective service of process. Rule 4(h) concerns papers: it looks at the face of the process and the face of the proof of service of process—it looks no farther. It concerns formal errors:

> The most common occasion for amendment is when plaintiff has made a simple mistake or a technical error that results in a failure to identify defendant properly, such as when a corporation is not denominated by its registered name or defendant's name is misspelled. When the error goes to form rather than substance, as these defects obviously do, and the proper defendant receives the original process, realizes it is directed at him, and thus is put on notice of the commencement of the action, there is no reason why a federal court should refuse to permit amendment.

C. Wright & A. Miller, 4 Federal Practice and Procedure § 1131, at 547–48 (1969) (footnotes omitted).

Plaintiff does not seek, in any sense, to amend his process. Moreover, nothing could be more removed from "a simple mistake or a technical error" than seeking, simultaneously, to avoid a statute of limitations defense and to obtain jurisdiction over the defendant.

We are more troubled by the argument relating to 28 U.S.C. § 1448 which provides in pertinent part:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service

has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

We conclude that, like Rule 4(h), it does not speak to the issues this litigation raises. Our conclusion is based both upon a consideration of the specific language and purpose of § 1448, and upon an awareness of the general policies and principles immanent in the federal removal jurisdiction.

Section 1448 contemplates primarily the following problem. A removable action is initiated in state court naming several defendants. The first defendant served with process, anxious not to lose his removal right by delay, files his petition for removal immediately and before effective service on "one or more of the [remaining] defendants." The federal court then has jurisdiction over the case, and over the petitioning defendant, but not over the remaining defendants still unserved. Section 1448 authorizes the federal court to issue process to obtain jurisdiction over them and to proceed. See 28 U.S.C. § 1447(a). Section 1448, then, addresses itself to a problem quite different from that here presented.

However, because we can conceive cases where it would not be improper to apply it to a single defendant, cf. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953), we do not rest our conclusion that § 1448 does not apply solely on considerations of its purpose. To apply it to the circumstances of this case would constitute that statute a *pro tanto* abrogation of Pennsylvania's statute of limitations. We decline such a construction as violative of basic principles of removal jurisdiction. See generally, P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1192–1230 (2d ed. 1973).

It is often said, and it is undisputably the law, that removal jurisdiction is derivative—that the federal court

"derives" its jurisdiction from the state court and that, if the state court had no jurisdiction, the federal court can acquire none, and must dismiss. *E. g., Minnesota v. United States*, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Lambert Run Coal Co. v. Baltimore & O. R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); *Gleason v. United States*, 458 F.2d 171, 173–74 (3d Cir. 1972); C. Wright, Federal Courts § 38, at 132 (2d ed. 1970). Professor Moore correctly observes, however, that the "concept of derivative jurisdiction that commands dismissal is properly limited to jurisdiction over the subject matter." 1A, pt. 1, J. Moore, Federal Practice ¶ 0.168[4.—3], at 540 (2d ed. 1974). Provisions of § 1448 obviously reinforce that observation. But, more important, a clear purpose of the derivative limitation—that federal courts not entertain, on removal, actions which the state courts could not entertain in the first instance—confirms the essential correctness of Moore's observation.

The ultimate question is simply this: on April 18, 1974, when defendant filed its petition for removal, could the Court of Common Pleas of Clearfield County have granted relief in the face of a statute of limitations defense? Clearly, it could not have done so, because the action was time-barred. This is dispositive of the case.

Clearly, the state court lacked personal jurisdiction over the defendant by virtue of the inadequacy of service of process. We may assume, without deciding, that this might have been remedied by the federal court. But the state court lacked something even more significant: plaintiff had not only failed to obtain jurisdiction over the defendant, he had failed to do so within the period of the statute of limitations. We do not suggest that a valid statute of limitations defense ought to be characterized as a defect of subject matter jurisdiction. *But cf.* Hart & Wechsler's The Federal Courts and the Federal System, *supra,* at 839–40. And we hasten to note that, unlike subject matter jurisdiction, the statute of limitations is a waivable affirmative defense. But logic would compel the conclusion that if one may not prosecute on removal an action in which the state court lacked subject matter jurisdiction, then one may not prosecute on removal an action in which the state court would have denied relief because the claim was time-barred under state law. We find inherent in Pennsylvania's statute of limitations the same kind of courtroom door-closing policy that inheres in traditional subject matter limitations—the courts are not to entertain the claim—and we deem that policy worthy of federal respect. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Hart & Wechsler's The Federal Courts and the Federal System, *supra,* at 754–55. Analogizing to the doctrine of derivative jurisdiction, we conclude that the district court could not grant federal relief in this removed diversity case which would have been dismissed as time-barred had it remained in state court and the proper limitations of actions defense been asserted there as was presented here. Implicit in our conclusion is that § 1448 cannot be utilized to breathe jurisprudential life in federal court into a case legally dead in state court.

We have attempted, in our analysis, to "stay close to basic principles." *Hanna v. Plumer*, 380 U.S. at 475, 85 S.Ct. 1136 (Harlan, J., concurring). We have set forth the reasons why we feel the state rule ought to control, part A, *supra,* and we have indicated why we consider the federal statutes inapplicable, part B, *supra.* We discern valid reasons supporting the application of state law. And we perceive at work here no federal "affirmative countervailing considerations." *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). *See* R. Leflar, American Conflicts Law § 66, at 152 (rev.ed. 1968). On the contrary, it is federal policy to strictly construe removal statutes and to limit the removal juris-

diction of the federal courts. The cases are legion. See cases collected at 28 U.S.C.A. § 1441 nn.8, 9, at 30–32; 1 W. Barron & A. Holtzoff, Federal Practice and Procedure § 101 nn.7.5, 7.6 (Wright ed. 1961).

Our decision is not to be construed as casting doubt on the validity or general availability of Rule 4(h) of the F.R.Civ.P. or on 28 U.S.C.A. § 1448—we have decided only that those statutes do not apply to this factual complex. *See Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 201–02, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Furthermore, we express no opinion on what the result would have been if defendant had filed its removal petition prior to the expiration of the statute of limitations. That would be a very different case. The brute fact here is that the action was dead, time-barred, when the petition for removal was filed. Accordingly, we hold that the district court could not entertain the merits of the claim; it could only apply the state statute of limitations and dismiss the complaint.

### IV.

Two issues remain. Neither need detain us long. First, appellee argues that Firestone is barred by laches from objecting to improper service and asserting the defense of the statute of limitations. This argument borders on the frivolous: Firestone moved to dismiss by reason of the statute of limitations on April 19, 1974, one day after removal and only nine days after the statute ran. It is common sense not to interpose a statute of limitations defense until the statute has run. The objection to improper service was obviously related to the statute of limitations defense. It too was timely asserted.

Second, the district court's ruling that the amended complaint was timely because it related back to the original complaint is mooted by our decision that the district court could not entertain the original complaint, and was required to dismiss it. To paraphrase Winston Churchill, there is nothing back to which the amended complaint can relate.

The order appealed from will be vacated and the proceedings remanded to the district court with instructions to dismiss both the original and the amended complaint.