**Kirsten KANOUSE et al., Plaintiffs,**

v.

**WESTWOOD OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES et al., Defendants.**

**Civ. A. No. 79–1239.**

United States District Court,
D. New Jersey.

Jan. 9, 1981.

Aaron D. Blumberg, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa. and Joseph J. Master, Trimble & Master, Turnersville, N. J., for plaintiffs.

Glenn P. Callahan, Montano, Summers, Mullen & Manuel, Cherry Hill, N. J. and Burchard V. Martin, Martin, Crawshaw & Mayfield, Westmont, N. J. and David A. Parker, Parker, McCay & Criscuolo, Mount Holly, N. J., for defendants.

OPINION

BROTMAN, District Judge.

■ This is a medical malpractice action, jurisdiction of which is based on diversity of citizenship. Currently being considered by the court is defendants' motion seeking either a dismissal of the action or, in the alternative, that the court make available the procedures for panel review of medical malpractice cases that is mandated by New Jersey Court Rule 4:21. The court does not feel that it would be appropriate to dismiss the action on the basis of the State Court Rule. A State statute or court rule cannot divest this court of its jurisdiction over this dispute, which Congress granted by enacting 28 U.S.C. § 1332. *Cf. Hamilton v. Roth*, 624 F.2d 1204 (3rd Cir. 1980) (dealing with the somewhat different Pennsylvania medical malpractice tribunal procedure, the court held that diversity jurisdiction could, in effect, be postponed). The more difficult question is whether the Rules of Decision Act, 28 U.S.C. § 1652, as interpreted by *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny,

requires this court to adopt a procedure comparable to that being employed by the New Jersey State courts. For the reasons indicated below, the court feels that adoption of the State procedures for screening medical malpractice cases is appropriate.

■ Initially, it should be noted that the question is a true Rules of Decision Act/ *Erie* question, not one governed by the different standards of the Rules Enabling Act. For the differences between the two standards, *see generally Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693 (1974). This past term, in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court clarified the determination of which standard is applicable. The Rules Enabling Act standard applies when there is a "direct collision" between state law and the plain meaning of one of the Federal Rules of Civil Procedure. *Id.*, 100 S.Ct., at 1985 & n.9. The *Walker* Court held that there was no direct conflict between Fed.R. Civ.P. 3, which states that "[a] civil action is commenced by filing a complaint with the court," and the Oklahoma statute of limitations, which provides that the statute is tolled only upon the service of process. 100 S.Ct., at 1985–86. Because there was no direct conflict with a Federal Rule, the Court looked to the *Erie* line of cases, which construe the Rules of Decision Act, for the governing standard. *Id.*, 100 S.Ct., at 1986. Similarly, in the instant case, there is no "direct conflict" between the state rule and any Federal Rule of Civil Procedure. Accordingly, the governing standard is that developed in the cases construing the Rules of Decision Act.

The Rules of Decision Act, 28 U.S.C. § 1652, provides:

The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Two possible sticking points present no problem here. First, as this is a diversity case, involving no issues of federal law, this is definitely a case in which the laws of the several states apply. Second, it is clear after *Erie* that the New Jersey Court Rule must be deemed a "law" of the state for the purposes of interpreting the Act. (That is, of course, particularly true given the status New Jersey law accords such court rules. *See Winberry v. Salsbury*, 5 N.J. 240, 74 A.2d 406 (1950)). Thus, the issue before the court is the question that has become the focus of the *Erie* line of cases: Is the state rule a "rule of decision," which federal courts must follow, or is it merely a housekeeping rule, which federal courts are free to disregard?

The governing test for what constitutes a rule of decision has been gradually refined over the years since *Erie*. The prevailing test today is the modified outcome determination test adopted by the Court in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *See generally*, Ely, *supra*; Redish & Phillips, Erie *and the Rules of Decision Act: In Search of the Appropriate Dilemma*, 91 Harv.L.Rev. 356 (1977). Although the discussion in *Hanna* is arguably dictum, the test enunciated there was reaffirmed by the Court last term in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). The discussion of that test in *Hanna* is the Court's most thorough explication of the Rules of Decision Act Standard:

choices between state and federal law are to be made not by application of any automatic, "litmus paper" criterion, but rather by reference to the policies underlying the Erie rule.

The Erie rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court. . . . The "outcome-determination" test therefore cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.

380 U.S., at 467–68, 85 S.Ct. at 1141–1142 (citations deleted). As the *Hanna* Court explained further:

> Erie and its progeny make clear that when a federal court sitting in a diversity case is faced with a question of whether or not to apply state law, the importance of a state rule is indeed relevant, but only in the context of asking whether application of the rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court.

*Id.,* at 468 n.9, 85 S.Ct. at 1142. *See Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160, 164 (3rd Cir. 1976). As the *Witherow* court summarized the idea underlying *Erie,* "a federal court sitting in diversity merely provides an impartial forum, not a different set of legal rules." *Id.*

Applying the above standard, it seems appropriate for this court to adopt the New Jersey rule. As *Hanna* makes clear, it is irrelevant whether one defines that rule as "substantive" or "procedural"; the pivotal facts are that failure to adopt the State rule would inevitably lead to forum shopping and would result in inequitable administration of the laws. There can be no doubt that the malpractice procedure was designed to have a significant affect on the cases governed by it. Though adopted as a Court Rule, the panel procedure was intended to be much more than a housekeeping measure for the courts; it was intended to directly affect the parties to such litigation and, indeed, increase the availability of malpractice insurance in New Jersey. *See Suchit v. Baxt,* 176 N.J.Super. 407, 423 A.2d 670 (Super.Ct. Passaic County, 1980); Report of the Supreme Court's Committee on Relations with the Medical Profession, 101 N.J.L.J. Index 45 (1978). In addition, given the likely effect of the panel procedure, it would be fundamentally unfair to subject one set of plaintiffs to the Rule but not another set solely because of the fortuity of diversity of citizenship. As *Hanna* and *Walker* observe, the *Erie* rule was adopted to eliminate precisely this sort of unfairness.

The federal courts have been virtually unanimous in mandating that comparable panel procedures be used in diversity cases. Four circuit courts of appeals have considered the issue and all of them have concluded that the federal courts should adopt panel procedures when the applicable state law provides for such panels. *See Davison v. Sinai Hospital of Baltimore, Inc.,* 617 F.2d 361 (4th Cir. 1980); *Edelson v. Soricelli,* 610 F.2d 131 (3rd Cir. 1979); *Hines v. Elkhart General Hospital,* 603 F.2d 646 (7th Cir. 1979); *Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5th Cir. 1979). Many district courts have reached the same conclusion. *See, e. g., Wells v. McCarthy,* 432 F.Supp. 688 (E.D.Mo.1977); *Marquez v. Hahnemann Med. Coll. & Hospital,* 435 F.Supp. 972 (E.D. Pa.1976); *Flotemersch v. Bedford Gen. Hospital,* 69 F.R.D. 556 (E.D.Tenn.1975). In addition, at least two scholarly commentators have reached the same result. *See* Alexander, *State Medical Malpractice Screening Panels in Federal Diversity Actions,* 21 Ariz.L.Rev. 959 (1980); Redish & Phillips, *supra,* 91 Harv.L.Rev., at 399–400.

There is apparently only one reported decision holding to the contrary, Chief Judge Pettine's opinion in *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978).[1] There are several problems with this decision, perhaps the major one being that its holding relies on the interest balancing approach to *Erie* problems that the Court adopted in *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d

---

**1.** In addition, there are at least two student commentators who have specifically criticized the Third Circuit's decision in Edelson. *See* Comment, *Mandatory State Malpractice Arbitration and the Erie Problem,* 93 Harv.L.Rev.

1562 (1980); Comment, *Confrontation Between State Compulsory Medical Malpractice Screening Statutes and Federal Diversity Jurisdiction,* 1980 Duke L.J. 546 (1980).

953 (1958). That interest balancing approach has since been superseded by the decisions in *Hanna* and, more recently, in *Walker.* Moreover, even if the *Byrd* approach retains some validity, its ambit must be narrowly confined to situations like *Byrd,* which involved the constitutional right to a trial by jury on one side of the equation and minimal state policy concerns on the other side. 356 U.S., at 535–37, 78 S.Ct. at 899–900.

As indicated above, the Third Circuit has explicitly held that federal district courts sitting in malpractice cases under Pennsylvania law must apply that State's panel procedures. *See Hamilton v. Roth,* 624 F.2d 1204 (3rd Cir. 1980); *Edelson v. Soricelli,* 610 F.2d 131 (3rd Cir. 1979). Of course, the Pennsylvania procedures can be distinguished from those of New Jersey. But the *Edelson* court expressly disavowed the importance of minor distinctions in the operations of such panels. *Id.,* at 137, n.8. The point is simply that the policy considerations that underlie the *Erie* line of cases render such minor distinctions irrelevant. Thus, although the Pennsylvania procedures are somewhat different from those adopted in New Jersey, there is no principled basis on which to distinguish the instant situation from the Third Circuit's rulings in *Edelson, supra,* and *Hamilton, supra.* Moreover, the court believes that *Edelson* is not merely binding authority, but also a proper interpretation of the requirements of the Rules of Decision Act. Accordingly, we will adhere as closely as is possible to the holding of that case.

The distinctions between the Pennsylvania and New Jersey procedures, however, mandate a somewhat different mechanism for arriving at the goal of adhering to the state rule of decision. This court believes the appropriate course is not to dismiss the action, but rather to defer proceedings in this matter pending a hearing before a panel comparable to the panels utilized by the New Jersey State courts. The United States Magistrate shall act as the Judge and presiding officer at the panel hearing.[2] The details of the hearing will be left to his discretion, acting in accordance with the spirit and direction provided by New Jersey Court Rule 4:21.

---

**2.** We note in passing that the approach taken by this court in resolving this matter should not raise the jurisdictional concerns expressed by

Judge Rosenn in his dissent in *Edelson. See* 610 F.2d, at 141–49.