624 F.2d 1204
 Jimmy L. HAMILTON, Appellant/Cross-Appellee,
v.
Lawrence V. ROTH, Jr., Individually and in his official
capacity as Warden of Montgomery County Prison, W.
Anastasia, Individually and in his official capacity as
Deputy Warden of Montgomery County Prison, Dr. Andries,
Individually and in his official capacity as Physician of
Montgomery County Prison, Montgomery County Board of Prison
Inspectors, Individually and in their official capacities:
Robert McCracken, James Hogg, Theodore Ellis, Robert Asher,
Barry Haines, Charles L. Peixoto, Jr., Montgomery County
Commissioners, Individually and in their official
capacities: A. Russell Parkhouse, Frank W. Jenkins, Lawrence
H. Curry, Julius T. Cuyler, Individually and in his official
capacity as Warden of the State Correctional Institution at
Graterford, Dr. Gaffney, Individually and in his official
capacity as Physician at the State Correctional Institution
at Graterford, Glen R. Jeffes, Individually and in his
official capacity as Warden of the State Correctional
Institution at Dallas, Mr. Kilgannon, Individually and in
his official capacity as Assistant Warden at Montgomery
County Prison, and Mr. Carlin, Individually and in his
official capacity as Administrator of work release at
Montgomery County Prison, Appellees,
Dr. Edmund Gaffney, Appellee/Cross-Appellant.
 Nos. 79-2171, 79-2285.
 United States Court of Appeals,
Third Circuit.
 Argued March 27, 1980.
Decided July 2, 1980.
 
 Stanley I. Slipakoff (argued), Asst. Atty. Gen., John O. J. Shellenberger, Deputy Atty. Gen., Eastern Regional Director, Edward G. Biester, Jr., Atty. Gen., Commonwealth of Pennsylvania Dept. of Justice, Philadelphia, Pa., for appellee/cross-appellant, Gaffney.
 Arthur W. Lefco (argued), Marguerite J. Ayres, Mesirov, Gelman, Jaffee, Cramer & Jamieson, Philadelphia, Pa., for appellant/cross-appellee, Hamilton.
 Before ROSENN, GARTH and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 Jimmy Lee Hamilton, the appellant, suffers from a recurrent growth on his penis known as an intraurethral condyloma acuminatum of Buschke and Lowenstein. Such condylomas resemble in appearance large warts. He first developed this growth while serving in the Marines. It reappeared shortly before he was incarcerated in the Pennsylvania State Correctional Institution at Graterford. The military doctors were rather more attentive to his problem than those at Graterford. Indeed, in the two months he spent at Graterford, Hamilton's repeated requests for treatment resulted only in Excedrin being provided, when it is acknowledged that the proper treatment is prompt surgical excision. Thus, Hamilton brought suit charging that his lack of treatment constituted cruel and unusual punishment in violation of the Eighth Amendment. To this claim he added a state claim of medical malpractice.
 
 
 2
 At the completion of the presentation of evidence to the jury, the district court directed a verdict on the Eighth Amendment claim in favor of Dr. Edmund Gaffney, Medical Director at Graterford, who was the sole remaining defendant at the time of trial. Hamilton appeals this ruling. The malpractice claim was submitted to the jury, which returned a verdict in Hamilton's favor of $2,500. Dr. Gaffney cross-appeals from this verdict. The doctor claims that under Pennsylvania's Health Care Services Malpractice Act, 40 Pa.Stat.Ann. § 1301.101 to § 1301.1006 (Supp.1979), and this court's recent decision in Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979), the district court was without subject matter jurisdiction to entertain the malpractice claim, since that claim had not first been submitted to a Pennsylvania malpractice arbitration panel. Submission of malpractice claims to arbitration panels, prior to such claims being asserted in any court action, is required by the Health Care Services Malpractice Act. See 40 Pa.Stat.Ann. § 1301.309. This court held in Edelson that the Pennsylvania arbitration requirement for malpractice claims was binding on the federal courts in the exercise of their diversity jurisdiction, under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 66, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 3
 We hold that the district court did not err in directing a verdict in favor of Dr. Gaffney on Hamilton's Eighth Amendment claim. We agree, however, with Dr. Gaffney on his cross-appeal that the district court had no jurisdiction to hear Hamilton's pendent malpractice claim.
 
 I.
 
 4
 Jimmy Lee Hamilton was convicted of criminal charges in the Pennsylvania state courts and was confined in the Montgomery County Prison on May 20, 1975. The condyloma about which the instant controversy revolves began to develop shortly before Hamilton was sent to Montgomery, but he sought no treatment for it before his incarceration. On January 12, 1976, Hamilton was transferred from Montgomery to the Pennsylvania State Correctional Institution at Graterford. Shortly after his transfer, on January 15, 1976, Hamilton was examined for the first time by Dr. Gaffney. Dr. Gaffney examined the condyloma, and told Hamilton that he would order a consultation by an outside urologist. In accordance with prison procedures, Dr. Gaffney then ordered this consultation. He did so by filing an order for urological consultation with the prison's medical administrator. Unfortunately, this consultation never took place.
 
 
 5
 Over the course of the next two months, Hamilton complained regularly about his problem and the absence of treatment to staff doctors and other prison personnel. His complaints went unanswered. Hamilton, however, made none of these complaints to Dr. Gaffney. Hamilton did see Dr. Gaffney a second time, shortly before Hamilton was transferred from Graterford to the Pennsylvania State Correctional Institution at Dallas on March 8, 1976. At this time, Hamilton complained that he had never had the consultation that Dr. Gaffney had ordered. Surprised at learning that no consultation had taken place, Dr. Gaffney went directly to the chief medical administrator of the prison and issued an oral direction for the consultation. Hamilton was transferred out of Graterford, however, before the consultation could take place. A few weeks after Hamilton's transfer to Dallas, he was examined by a urologist. The condyloma was surgically removed four days later.
 
 
 6
 Hamilton brought suit against various officials of the Montgomery County Prison System, the State Correctional Institution at Graterford, and the State Correctional Institution at Dallas. He presented two claims: that the failure to provide prompt medical treatment constituted cruel and unusual punishment in violation of the Eighth Amendment; and, that this same failure constituted medical malpractice. This latter claim invoked the court's pendent jurisdiction.
 
 
 7
 A settlement was reached with the Montgomery County officials and they were dismissed from the suit. Hamilton then consented to the dismissal of all the remaining Graterford and Dallas defendants, with the exception of Dr. Gaffney. A jury trial was held on Hamilton's contentions over the course of two days. As noted, the district court granted Dr. Gaffney's motion for a directed verdict on the Eighth Amendment claim at the close of testimony, ruling "that there is no evidence which would be sufficient to go to the jury on any violation of constitutional rights." The malpractice claim was submitted to the jury, and it returned a $2,500 verdict for Hamilton.
 
 
 8
 Cross-appeals were then filed by the parties. Hamilton challenges the directed verdict on the Eighth Amendment claim, while Dr. Gaffney challenges the submission of the malpractice claim to the jury. We address these contentions in turn, finding merit in Dr. Gaffney's cross-appeal, but no merit in Hamilton's Eighth Amendment contention.
 
 II.
 
 9
 The parties agree on the legal principles applicable to Hamilton's charge that the lack of treatment at Graterford constituted cruel and unusual punishment in violation of the Eighth Amendment. The standard is defined by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976): the Eighth Amendment proscribes only "deliberate indifference to serious medical needs." Id. at 104, 97 S.Ct. at 291. We must determine, then, whether Hamilton has adduced sufficient evidence of Dr. Gaffney's deliberate indifference to Hamilton's serious medical needs to survive a motion for a directed verdict.
 
 
 10
 A directed verdict, like a summary judgment, should not lightly be granted. Outside its proper sphere, a directed verdict results in the impermissible substitution of fact finding by the trial court for fact finding by the jury. We recently described the standard of review of a directed verdict as follows:
 
 
 11
 Because this is an appeal from a directed verdict for the defendant, we must examine the record in a light most favorable to the plaintiff, and review the specific evidence in the record and all inferences reasonably capable of being drawn therefrom. We must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief. If the evidence is of such character that reasonable men, in the impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury. Since a directed verdict motion deprives a party of jury fact-determination, it should be granted sparingly and circumspectly. Nevertheless the federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.
 
 
 12
 Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978) (citations and internal quotations omitted).
 
 
 13
 Despite the rigorous review to which a directed verdict is subject on appeal, it is evident here that the district court did not err in granting Dr. Gaffney's motion for a directed verdict on Hamilton's Eight Amendment claim.
 
 
 14
 Estelle v. Gamble enunciates a two part test: the medical needs must be serious, and the defendant's response must be deliberate indifference. We do not question that Hamilton has offered sufficient evidence to permit a jury to find that his medical needs were serious, and that he could thereby survive a directed verdict as to one half of the Estelle standard.[1] But we cannot say the same with respect to the requirement that there be evidence of Dr. Gaffney's deliberate indifference. Hamilton's proofs are critically deficient in providing a basis on which a jury could reasonably conclude that Dr. Gaffney had been deliberately indifferent to Hamilton's problem. Rather, the evidence adduced at trial points in the opposite direction.
 
 
 15
 The uncontroverted evidence at trial demonstrated a division of responsibility on medical matters at Graterford between the treating physicians and the medical administrative staff. When a physician orders a consultation with an outside specialist, it is not the responsibility of the prison physician to follow up his order to ensure that the consultation has been performed. Rather, it is the responsibility of the medical administrative staff. This responsibility is divided because the treating physicians order a great number of outside consultations, sometimes as many as twenty a day, and it is inefficient, if not impossible, for the physician himself to maintain administrative control over each such order.
 
 
 16
 This division of responsibility highlights the evidentiary deficiencies in Hamilton's case. When Dr. Gaffney first saw Hamilton on January 15, 1976, he ordered a consultation with an outside urologist. The responsibility thereafter for implementing that order devolved not upon Dr. Gaffney, but rather upon the medical administrative staff. When Dr. Gaffney saw Hamilton several weeks later, and learned that the consultation had yet to take place, he again directed that there be a consultation. This time, Dr. Gaffney personally issued his consultation order to the chief medical administrator. That neither consultation ever took place may demonstrate a defect in the prison's administrative system, but it can have no probative value in demonstrating deliberate indifference on Dr. Gaffney's part. To the contrary, rather than revealing a deliberate indifference, the evidence demonstrates a professional concern on the part of the treating physician. Not only does this evidence fail to support Hamilton's claims, but there is no other evidence which can support even an inference of deliberate indifference. Hamilton's case against Gaffney thus depends on the uncontroverted facts that, on two occasions, Dr. Gaffney ordered specialty consultations; that the medical administrator was charged with executing these orders; and that the administrator, and not Dr. Gaffney, failed to do so.
 
 
 17
 On this record, we can find no error in the district court granting Dr. Gaffney's motion for a directed verdict on the Eighth Amendment issue.
 
 III.
 
 18
 We turn now to a consideration of Dr. Gaffney's cross-appeal. He argues that the district court erred in submitting the pendent medical malpractice claim to the jury, on the ground that the court was without subject matter jurisdiction to hear the claim.[2] He bases this contention, as noted above, on Pennsylvania's Health Care Services Malpractice Act, 40 Pa.Stat.Ann. § 1301.101 to § 1301.1006 (Supp.1979), and the recent decision of this court in Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979). In the Malpractice Act, Pennsylvania established an elaborate administrative scheme for the resolution of medical malpractice claims.[3] Edelson described the Act as requiring arbitration as "a condition precedent to entry into the state judicial system." 610 F.2d at 134. Original jurisdiction over medical malpractice claims is conferred by the Act on the arbitration panels that the Act sets up. Section 1301.309 provides in pertinent part:
 
 
 19
 The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided.
 
 
 20
 (emphasis supplied).
 
 
 21
 The Act also provides for judicial review, including trial de novo, of final arbitration awards. 40 Pa.Stat.Ann. § 1301.509 (Supp.1979).
 
 
 22
 We considered the significance of this statutory scheme in the context of a federal court exercising its diversity jurisdiction in Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979). We held that a federal court in a diversity action, under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must give effect to Pennsylvania's Malpractice Act, and has no jurisdiction to entertain Pennsylvania medical malpractice suits that have not yet been submitted to arbitration. Thus, we held in Edelson that arbitration was a precondition to bringing suit on a medical malpractice claim in any court, state or federal.
 
 
 23
 Dr. Gaffney now contends that Edelson controls this case, that the district court here, like the courts of the State of Pennsylvania, was without subject matter jurisdiction to hear this suit. Hamilton offers a two-fold response. First, he claims that Edelson was wrongly decided and should be overruled at this time. The short answer to this argument is that a precedent established by this court can only be overturned by the court sitting en banc, and not by a subsequent panel determination.[4] See 3d Cir. Internal Operating Procedures, VIII (C); Sikora v. American Can Co., 622 F.2d 1116 at 1124, (3d Cir. 1980); Holliday v. Ketchum, MacLeod & Grove, Inc., 584 F.2d 1221, 1222 & n. 3 (3d Cir. 1978) (en banc).
 
 
 24
 Second, he argues that Edelson arose in the diversity context, while the present case involves this court's jurisdiction that is pendent to a properly asserted section 1983 claim. Hamilton argues that this difference supports, and, indeed, requires a result different from that reached in Edelson. He thus argues that the district court in this "pendent" context has jurisdiction to retain and adjudicate a Pennsylvania malpractice claim.
 
 
 25
 His argument, cast in the most favorable light, proceeds as follows. The determination whether a state rule shall be applied by a federal court under Erie must be made with reference to two central considerations: will a different federal rule contribute to a different result in a federal forum than a state forum, thus leading to forum shopping by litigants; and do countervailing federal considerations compel adherence to the federal rule and rejection of the conflicting state rule. Both of these concerns, according to Hamilton, require a different result under Erie in a pendent jurisdiction context as opposed to a diversity context. First, Hamilton asserts, forum shopping presents a minimal problem in the present context because pendent jurisdiction may only be invoked by a plaintiff who is already in federal court and who is relying upon an independent basis of federal jurisdiction. Second, since pendent jurisdiction is exercised only where two claims are so closely related as to be normally tried in a single action, see United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and since the related federal claim must be entertained in any event, there is a federal interest in adjudicating the state claim at the same time, rather than remitting it to an arbitration panel. By doing so, a multiplicity of actions is thus avoided, claims Hamilton.[5]
 
 
 26
 While Hamilton's argument is not without some surface appeal, we are not persuaded by it. The principle of Erie is that federal courts adjudicating rights conferred by state law must do so through the application of substantive state law. The Erie doctrine in no sense varies with the particular basis of jurisdiction through which state-created causes of action make their way into federal court. The Erie principle is concerned not with the source of federal jurisdiction, but rather with the source of the rights being adjudicated: state-created rights must be determined in accordance with state law. See Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 781 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). To adopt Hamilton's logic would lead to the bizarre result of applying Pennsylvania state law to a Pennsylvania claim in a diversity case, but federal law to the same Pennsylvania claim when that claim is heard under pendent jurisdiction.
 
 
 27
 Having once held, in Edelson, albeit in a diversity context, that a Pennsylvania malpractice claim must first be heard by the Pennsylvania arbitration board, we have been offered no sound reason by Hamilton why this ruling should be modified simply because a different basis of jurisdiction has been alleged. The concerns of forum shopping and countervailing federal considerations are, of course, relevant to the initial determination whether Erie requires the application of a state rule by a federal court adjudicating a state law claim. But having once resolved those issues, and having once made the determination that state law must be applied, the mere assertion of a different jurisdictional basis cannot require either a redetermination of those factors, or a different result.[6]
 
 
 28
 While no case that has been called to our attention has considered the precise argument presented here by Hamilton that the Erie doctrine applies differently in the pendent and diversity jurisdiction contexts the more general proposition that Erie does apply to state claims heard under pendent jurisdiction has received the uniform support of lower federal courts and commentators. E. g., Van Gemert v. Boeing Co., 553 F.2d 812, 813 (2d Cir. 1977); Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 780-81 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965)[7]; Chavez v. Southern Pacific Transportation Co., 413 F.Supp. 1203, 1205 (E.D.Cal.1976); Briskin v. Glickman, 267 F.Supp. 600, 603 (S.D.N.Y.1967); Mintz v. Allen, 254 F.Supp. 1012, 1013 (S.D.N.Y.1966); 1A Moore's Federal Practice P 0.305(3), at 3050-51 (2d ed. 1979); Note, The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Colum.L.Rev. 1018, 1043 & n.142 (1962). It also seems fairly compelled by the Supreme Court's own discussion of pendent jurisdiction. In the leading case of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court noted:
 
 
 29
 Its (pendent jurisdiction's) justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.
 
 
 30
 383 U.S. at 726, 86 S.Ct. at 1139 (emphasis added, footnote omitted). None of these authorities provide even the least support for the view that a state rule deemed binding on a federal court under Erie in the diversity context can be ignored by a federal court exercising pendent jurisdiction. We thus find our result not merely a product of the logic of Erie, but soundly based in precedent as well.
 
 
 31
 We conclude, then, that the status of Hamilton's malpractice action as a pendent claim provides no basis for rejecting the rule of Edelson v. Soricelli.
 
 IV.
 
 32
 We thus conclude that the district court did not err in directing a verdict in favor of Dr. Gaffney on Hamilton's claim under the Eighth Amendment. Accordingly, the judgment of the district court in Hamilton's appeal at No. 79-2285 will be affirmed.
 
 
 33
 We hold further that the district court was without subject matter jurisdiction to hear Hamilton's related medical malpractice claim. Thus, the court's judgment of $2,500 in Hamilton's favor, based on a jury verdict entered July 20, 1979, and appealed by Dr. Gaffney at No. 79-2171, will be vacated. That cause will be remanded to the district court with a direction to dismiss Hamilton's malpractice claim without prejudice to Hamilton's "right to file (a) fresh complaint( ) after completing arbitration." See Edelson v. Soricelli, 610 F.2d at 133. Costs in both appeals will be taxed against Hamilton.
 
 
 34
 ROSENN, Circuit Judge, concurring and dissenting.
 
 
 35
 In Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979) (Rosenn, J., dissenting), the court denied access to the federal courts in a medical malpractice claim under the diversity statute on the ground that the exercise of federal jurisdiction would be improper until the claim was arbitrated under Pennsylvania's arbitration statute. In this case, the majority unjustifiably extends Edelson to bar federal jurisdiction of a malpractice claim pendent to a substantial federal claim, although the district court exercised its discretion to hear the claim and the case has concluded with a jury verdict for the plaintiff. Because neither Edelson nor this case has addressed the crucial issue that the Malpractice Arbitration Panel is a judicial entity in Pennsylvania and Edelson is distinguishable from the case at bar, I must respectfully dissent.[1]
 
 
 36
 Jimmy Lee Hamilton brought suit on two claims: a civil rights claim that the failure to provide prompt medical treatment constituted cruel and unusual punishment in violation of 42 U.S.C. § 1983 and the Eighth Amendment and a claim that this same failure constituted medical malpractice. The district court granted Dr. Gaffney's motion for a directed verdict on the section 1983 claim because there was insufficient evidence to go to the jury. The court concluded that it properly had pendent jurisdiction over the malpractice claim and submitted the issue to the jury. After trial, the jury returned a verdict of $2500 for Hamilton.
 
 
 37
 The majority now holds that the award on the malpractice count was improper because the district court lacked the power to entertain the pendent claim.[2] The majority reasons that Edelson v. Soricelli, supra, has already decided that the exclusive jurisdiction of the malpractice panel is a matter of substantive state law and that substantive law is binding on the federal courts when under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), they entertain diversity cases and pendent claims. Although I agree that Erie requires a balancing test to determine the applicable law in a federal forum in both diversity cases and pendent claims, I believe the result of the balance may differ with the varying federal interests in each type of jurisdiction.
 
 
 38
 In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court enunciated a two-prong analysis for determining whether to exercise jurisdiction over a pendent state claim. First, a court must determine if it has the judicial power to hear the claim.
 
 
 39
 Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim "arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ," U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."
 
 
 40
 Id. at 725, 86 S.Ct. at 1138 (footnote omitted; emphasis in original). Second, the court must exercise its discretion and determine whether to assert jurisdiction.
 
 
 41
 It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them . . . .
 
 
 42
 Id. at 726, 86 S.Ct. at 1139 (footnote omitted).
 
 
 43
 In this case the majority holds that the district court lacks the power to hear the pendent state claim because subject matter jurisdiction lies in the malpractice panel, not a state court. I find this conclusion unacceptable for several reasons. First, Gibbs makes it clear that the power to exercise pendent jurisdiction exists whenever the state and federal claims "derive from a common nucleus of operative fact" and the federal claim is substantial. 383 U.S. at 725, 86 S.Ct. at 1138. There is no question that the section 1983 claim and the malpractice claim at issue here comprise but one case.
 
 
 44
 Second, neither Edelson nor this case addresses the issue I believed dispositive in Edelson, that the arbitration panel is a "judicial entity artfully draped in non-judicial garb." 610 F.2d at 142.[3] The arbitration panel possesses the crucial attributes of a judicial entity and not an administrative agency.[4] Because I believe the arbitration panel possesses these attributes, a federal court has the same power over pendent malpractice claims in Pennsylvania as over any other pendent state law claims.[5]
 
 
 45
 Third, an application of Erie in this case yields a different result than that reached in Edelson. In Edelson, an out-of-state plaintiff asserted a medical malpractice claim in federal court under diversity jurisdiction. The majority concluded that federal jurisdiction was not available because the out-of-state plaintiff was subject to the same arbitration procedure applicable to state court plaintiffs. The court reached its result by examining the policies behind Erie.
 
 
 46
 (W)e apply the traditional Erie formulation, emphasizing especially the policies of preventing forum shopping by non-resident plaintiffs and avoiding application of different law so as to discriminate against resident plaintiffs. By allowing appellants to avoid the arbitration procedure, we would thwart both these goals. Plaintiffs in diversity actions would have a definite and significant advantage not available to state court plaintiffs. This advantage, which appellants' own arguments demonstrate to be substantial, would encourage forum shopping between the state and federal judicial systems.
 
 
 47
 610 F.2d at 141. The key to the outcome in Edelson was the majority's fear of the dangers of forum shopping.
 
 
 48
 I do not believe the same dangers of forum shopping exist in the assertion of this pendent claim as existed in Edelson. In fact, I have doubts that any of the "evils" of forum shopping can be said to exist when the court properly entertains a pendent claim. The forum shopping "evils" in diversity jurisdiction presumably concern the inequity of an out-of-state plaintiff receiving better treatment in a federal court than a state court by virtue of the mere coincidence of his or her domicile.[6] The "evil" to be discouraged is the election of a federal forum over a state forum because the outcome may be more favorable in federal court.[7] See, e. g., Guaranty Trust Co. v. York, 326 U.S. 99, 109-10, 65 S.Ct. 1464, 1469-1470, 89 L.Ed. 2079 (1944). In pendent jurisdiction, the plaintiff does not elect between forums. For a federal court to exercise power over the state claim, a substantial federal claim must exist. United Mine Workers v. Gibbs, supra. Thus there is no forum shopping because the plaintiff is properly in federal court in the first instance by nature of the federal claim.[8] To the extent that the federal claim is used as a bootstrap, merely to facilitate the choice of a federal forum for the pendent state claim, the district court may properly exercise its discretion and decline to accept pendent jurisdiction. United Mine Workers v. Gibbs, supra, 383 U.S. at 726, 86 S.Ct. at 1139.
 
 
 49
 Moreover, there are strong federal interests in the exercise of pendent jurisdiction which outweigh any intrusion on the state procedure. In Byrd v. Blue Ridge Electrical Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Court concluded the determination of whether the plaintiff was an employee under the South Carolina Workmen's Compensation Act was a jury question in federal court, even though it would be decided by a judge in a South Carolina state court. In Byrd, the Court relied on three factors in deciding whether federal law would apply: The state interest, the possibility of a different outcome in state and federal court, and the countervailing federal interests. In Edelson the majority applied Byrd to the malpractice panel and concluded that Pennsylvania has a legitimate interest in the pre-judicial arbitration board and that the outcome could differ in the state system and federal courts.[9] I recognize that I am bound by those conclusions under the rules of this court. See 3rd Cir. Internal Operating Procedures, VIII(C). The Edelson majority then went on to consider the countervailing federal interests which it characterized as plaintiff's "most effective legal argument." 610 F.2d at 138. Rejecting the contention that the malpractice panel impermissibly impinged on the right to jury trial, the majority stated: "We find no affirmative countervailing consideration here." 610 F.2d at 139.
 
 
 50
 I believe there are important countervailing considerations in this case not present in Edelson, which alter the balance under Byrd. Pendent jurisdiction implicates important federal considerations of judicial economy, litigant convenience and the avoidance of potential collateral estoppel problems.[10] Writing for the majority in Gibbs, Justice Brennan acknowledged that these federal interests in pendent jurisdiction are "weighty." 383 U.S. at 724, 86 S.Ct. at 1138. The opportunity for the adjudication of an entire case in the federal forum provides a critical assurance that litigants will not forego important federal rights or be forced to enforce those rights in state court.[11] I believe these important federal interests alter the Byrd balance found in Edelson and necessitate a finding that the district court had the power to entertain the pendent claim.[12]
 
 
 51
 The majority in this case undertakes the sort of reasoning which is cautioned against by the Edelson majority.
 
 
 52
 (C)hoices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the Erie rule. (Hanna v. Plumer, 380 U.S. 460, 467, 85 S.Ct. 1136, 1141-1142, 14 L.Ed.2d 8 (1965)). . . .
 
 
 53
 By whatever label, it is a process of circular reasoning that fails to prove the initial thesis propounded and uses the argued thesis as proof of itself. Labeling a legal precept ab initio as 'procedural' or 'substantive,' without more, contributes nothing to reasoned discourse. It provides no effective guidance in solving difficult problems that arise in diversity cases such as the one before us. Thus, even if we were to agree with appellants, by labeling the arbitration requirement procedural, that characterization would not be dispositive; we would still need to examine its effect on diversity litigation under the Erie mandate. See Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160, 163-65 (3d Cir. 1976).
 
 
 54
 610 F.2d at 133. The majority in this case concludes that the Erie balance has been struck in Edelson and therefore the arbitration panel is "substantive" state law in a pendent jurisdiction case. The majority's fallacy is the assumption that the balancing test under Erie will yield the same result, regardless of the jurisdictional context. As the majority in Edelson pointed out, Erie is not the answer but simply the mechanism to find the answer. The majority failed to use that mechanism in this case.
 
 
 55
 The burden which the majority's holding will place on injured plaintiffs is apparent from the facts of this case. Hamilton already has participated in one trial and received a jury verdict of $2500. To assert his malpractice claim, Hamilton must now proceed to trial before the arbitration panel, undergo untold long delays,[13] and then await their judgment. If he is unhappy with the award of the arbitration panel, Hamilton will have to appeal his award to the State Court of Common Pleas for a trial de novo. Thus, to seek redress for an injury, Hamilton will have to partake in at least three full trials plus an unknown number of appeals.[14] This result is completely at odds with the policies behind pendent jurisdiction and the federal courts' interest in administering justice fairly and economically.
 
 
 56
 The result of the majority's holding in this case is a further judicial imprimatur on a state malpractice scheme which the Edelson majority acknowledged is a "resounding flop." 610 F.2d at 136. Because I believe this extension of Edelson runs contrary to the principles of Erie, Byrd and Gibbs, I respectfully dissent.
 
 
 
 [1]
 In addition to other evidence, the expert witness who testified for Hamilton stated that the growth had a potential to become malignant
 
 
 [2]
 This issue, involving as it does subject matter jurisdiction, may be raised at any time
 
 
 [3]
 For a discussion of the Malpractice Act and its objectives, see Edelson v. Soricelli, 610 F.2d 131, 135-36 (3d Cir. 1979)
 
 
 [4]
 The view that Edelson v. Soricelli was wrongly decided likewise appears to be the principal underpinning of Judge Rosenn's dissent. It is a sufficient response to this view, and thus to the subsidiary arguments underlying it, that each of the rationales now advanced by Hamilton and the dissent were considered by the court in Edelson and were rejected. This court held there that submission to the Pennsylvania malpractice arbitration panel was a precondition to judicial consideration of a Pennsylvania malpractice claim, whether the claim was asserted in state or federal court. We therefore hold that no court had subject matter jurisdiction over a malpractice suit until after arbitration proceedings had been completed. Thus, the position taken by the dissent here has been foreclosed by our earlier decision in Edelson v. Soricelli
 
 
 [5]
 For the overriding reasons discussed in text, we need not rebut in detail Hamilton's arguments concerning forum shopping and countervailing federal considerations. We note, however, that the federal interest in avoiding a multiplicity of actions, on which Hamilton relies, is an interest not confined to the pendent jurisdiction context; it can arise as well under diversity jurisdiction. Whenever a plaintiff, invoking diversity jurisdiction, brings suit on two related claims, the federal interest in avoiding a multiplicity of actions is implicated. If one of these diversity claims alleges medical malpractice, that claim under Edelson must be submitted to arbitration, even though the related claim is retained for adjudication in the federal court. Hence, there is no distinction between diversity and pendent jurisdiction in this respect
 
 
 [6]
 In addition to its argument that Edelson v. Soricelli was wrongly decided, see note 4 supra, the dissent seeks to distinguish this case from Edelson, claiming a substantive difference between diversity and pendent jurisdiction in this context
 The dissent first contends that a federal court has power to hear this claim under pendent jurisdiction because the claim derives from the "nucleus of operative fact" giving rise to the federal claim sued upon. See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); dissenting op., at 1213. There is no question that we have power under Gibbs to consider this claim. But Gibbs also requires that the federal court determine pendent claims in accordance with the applicable state law. See id. at 726, 86 S.Ct. at 1139. Here, the applicable state law requires that a malpractice claim be submitted to arbitration before being considered in court. Thus, while a federal court has the power under the Gibbs test of pendent jurisdiction to hear a malpractice claim, it may exercise this power only after the claim has been submitted to arbitration. We have so held first in Edelson and now here.
 Similarly, two other principal arguments of the dissent fail. The dissent contends that, by refusing to exercise pendent jurisdiction here, we are giving insufficient weight to the strong federal interest in pendent jurisdiction, and are burdening a plaintiff's right to have a federal claim heard in a federal forum. We cannot agree. As we have previously stated, pendent jurisdiction may be exercised over a state law medical malpractice claim, thus honoring a plaintiff's right to a federal forum, but only when, under the applicable state law, that claim is ripe for judicial consideration. Under Pennsylvania law, that point is only reached when arbitration proceedings have been completed.
 The dissent's final argument is that Erie requires a different result in this pendent jurisdiction context, as opposed to the diversity context considered in Edelson, because forum shopping presents a lesser problem here. The dissent argues that forum shopping is of no concern in a pendent jurisdiction context because pendent jurisdiction may only be invoked by a plaintiff who is already in federal court on a valid, independent basis of federal jurisdiction. But in so arguing, the dissent ignores the primary evil of forum shopping, an evil which results whenever a plaintiff has the ability to chose between state and federal fora, and can obtain more favorable result in federal court. Such would be the case here, if we were to permit a plaintiff in Hamilton's position to have his medical malpractice claim initially adjudicated by a federal court. If, by invoking pendent jurisdiction in federal court, a plaintiff can circumvent the mandatory arbitration procedure for malpractice claims under Pennsylvania state law, the governing principle upon which the Erie doctrine is predicated will have been frustrated.
 
 
 [7]
 The Flexitized case presents the same question in a slightly different context. The Court of Appeals for the Second Circuit there considered the law to be applied to a state law unfair competition claim heard not under diversity jurisdiction but under the statutory pendent jurisdiction to hear such claims conferred by 28 U.S.C. § 1338(b) (1976). Section 1338(a) confers subject matter jurisdiction on the district courts to hear suits arising under federal patent, copyright, and trademark statutes. Section 1338(b) confers pendent jurisdiction to hear state law unfair competition claims "when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws." The court held that state law governed the adjudication of the state law unfair competition claim without regard to the jurisdictional basis on which the claim rested:
 In Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540-41 (2d Cir. 1956), we had occasion to discuss in detail in a lengthy first footnote to that opinion, the law to be applied in adjudicating an unfair competition claim over which federal jurisdiction had been acquired only because of the pendent jurisdiction provisions of 28 U.S.C. § 1338(b). Basing our conclusions there upon a synthesis of American Auto. Ass'n v. Spiegel, 205 F.2d 771 (2d Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391 (1953), wherein the court held that the Lanham Act did not provide a federally created right of unfair competition, and Artype, Inc. v. Zappulla, 228 F.2d 695 (2d Cir. 1956), wherein this court held that state law governed an unfair competition claim joined with a federal trademark claim where diversity of citizenship existed, we indicated in Maternally Yours, that state law was properly to govern even where federal jurisdiction was pendent, for we noted that the source of the right sued upon, rather than the ground used to obtain federal jurisdiction, should determine the governing law.
 335 F.2d at 780-81 (emphasis added).
 While the instant matter presents the question in the context of judicially created pendent jurisdiction, see United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), rather than statutory pendent jurisdiction, we join the Second Circuit in holding that it is "the source of the right sued upon, rather than the ground used to obtain federal jurisdiction," 335 F.2d at 781, that determines the applicable law.
 
 
 [1]
 I concur in Part II of the majority opinion holding that the district court did not err in directing a verdict in favor of Dr. Gaffney on Hamilton's Eighth Amendment claim
 
 
 [2]
 The majority asserts it is not deciding that the court lacks the power to hear the claim but that "it may exercise this power only after the claim has been submitted to arbitration." Maj. op. at 1210, n.6. It seems to me that this reasoning is circular because a holding that the court lacks power at this time is clearly dispositive of the pendent state claim for purposes of federal jurisdiction. Once that claim is referred to arbitration, it will not be heard again in a federal court because there will be no independent basis for jurisdiction
 
 
 [3]
 A commentator discussing Edelson noted: "It is unfortunate that the majority did not respond to the dissent's concern about the nature of the arbitration panel, for if (the dissent) is right, the majority's analysis is simply irrelevant." Comment, Mandatory State Malpractice Arbitration Boards and the Erie Problem : Edelson v. Soricelli, 93 Harv.L.Rev. 1562, 1566 (1980)
 
 
 [4]
 See 610 F.2d 142-44
 
 
 [5]
 See, e. g., Louise B. v. Coluatti, 606 F.2d 392, 399-400 (3d Cir. 1979) (finding that the exercise of pendent jurisdiction is proper over a state statutory breach of confidentiality claim, cognizable in state court)
 Even if my analysis is incorrect and the arbitration panel is a state agency, I can not agree with the majority's conclusion that this court lacks the power to entertain the claim. To the extent that the majority is declining jurisdiction to a state administrative agency it is applying a form of Burford abstention without a consideration of the underlying principles. In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), a federal district court abstained from hearing an attack on a ruling of the Texas Railroad Commission, granting a neighboring leaseholder a permit to drill new wells. The Supreme Court affirmed the abstention, holding that the complex problems of oil regulation and the special role of the Texas state courts made federal jurisdiction inappropriate. Several factors can be discerned from Burford and its progeny as to the instances where this administrative abstention doctrine is appropriate including a special state court expertise, an exclusive state judicial remedy, a state regulatory system, and potential disruption of state policy. See Comment, Abstention by Federal Courts in Suits Challenging State Administrative Decisions: The Scope of the Burford Doctrine, 46 U.Chi.L.Rev. 971 (1979). These factors appear to be relevant to the second prong of Gibbs, the discretion of the federal court to hear a pendent state claim, and not subject matter jurisdiction.
 
 
 [6]
 For critical evaluation of the "evils" of forum shopping see Hart, The Relations Between State and Federal Law, 54 Colum.L.Rev. 489, 513 (1954); Redish & Phillips, Erie and the Rules of Decision Act: In Search of the Appropriate Dilemma, 91 Harv.L.Rev. 356, 375-77 (1977)
 
 
 [7]
 The majority suggests that the "evils" of forum shopping exist whenever the plaintiff has the right to choose between a state and federal forum. Maj. op. at 1210, n.6. If this proposition were true then every federal exercise of congressionally authorized diversity jurisdiction would involve similar "evils." Such a reading of Erie emasculates the concept of concurrent federal jurisdiction embodied in the diversity and removal statutes
 
 
 [8]
 Of course the plaintiff may elect to bring the entire action in state court rather than federal court where concurrent jurisdiction exists. However, the choice to proceed with a federal claim in federal court is not forum shopping, but the exercise of a congressionally recognized federal right. The lack of prejudice to the defendant by the availability of the federal forum is evident from the fact that the defendant may elect to remove a claim from state court under 28 U.S.C. § 1441 (1976)
 
 
 [9]
 610 F.2d at 136-40. In dissent, I concluded there was not a legitimate state interest and that the result would not differ in state and federal court. 610 F.2d at 147-49. See also Comment, supra, n.3, 93 Harv.L.Rev. at 1569-73
 
 
 [10]
 See Note, The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Colum.L.Rev. 1018, 1019 (1962). It has been suggested that the policies behind pendent jurisdiction outweigh any anti-forum-shopping considerations. Note, Problems of Parallel State and Federal Remedies, 71 Harv.L.Rev. 513, 516 (1958)
 
 
 [11]
 In this case the plaintiff's federal claim was under 42 U.S.C. § 1983. I cannot believe this court would countenance a rule which would discourage a plaintiff from pursuing the adjudication of his constitutional rights in federal court
 
 
 [12]
 I do not believe the district court abused its discretion under the second prong of the Gibbs test in entertaining the malpractice claim because the federal claim is substantial, the Pennsylvania common law of malpractice is not ambiguous, and state claims did not predominate. See United Mine Workers v. Gibbs, supra, 383 U.S. at 726-27, 86 S.Ct. at 1139
 
 
 [13]
 See Edelson, supra, 610 F.2d at 135-36, 144-45
 
 
 [14]
 The situation is worse than that in Edelson where an out-of-state plaintiff was required to participate in two trials, one before the arbitration panel and one in the United States District Court