NYGAARD, Circuit Judge,
concurring in part and concurring in the judgment.
I join the majority’s opinion.[1] I write separately, however, because I believe the majority’s holding with respect to primary jurisdiction is incorrect and will unnecessarily limit the jurisdiction of the federal courts. Although I agree with the majority’s decision to apply primary jurisdiction analysis, I do not agree with the manner in which it conflates that doctrine with the district court’s constitutional and statutory subject matter jurisdiction to hear Teleconcepts’ third-party claim.
I.
The majority, recognizing that neither party below raised the issue, nevertheless concludes that “we must ... determine if the doctrine of primary jurisdiction applies.” Majority at 1103 (emphasis added). It relies for this proposition on Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227 (3d Cir.1994), in which we remarked that “when the legislature provides an agency with ‘exclusive primary jurisdiction,’ it preempts the courts’ original jurisdiction over the subject matter.” Id, at 1230 n. 5. That opinion also stated that we heard the appeal because “we are obliged to examine the subject matter jurisdiction of the district court.” Id. at 1230 n. 4. Essentially, the majority treats dicta from Greate Bay as a holding that a state legislature or court, by virtue of conferring “exclusive” primary jurisdiction on a state administrative agency, divests an Article III federal court of its subject matter jurisdiction. That treatment cannot withstand rigorous analysis, and, to the extent the majority adopts it,[2] I believe it errs.
A.
The majority recognizes that “language in some decisions ... seems to suggest a contrary result here.” Majority at 1106. Indeed, a whole host of cases stand for the proposition that primary jurisdiction (exclusive or otherwise) has nothing to do with subject matter jurisdiction. See Reiter v. Cooper, 507 U.S. 258, -, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) (“Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion to either retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.”); General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 432-33, 60 S.Ct. 325, 331, 84 L.Ed. 361 (1940) (district court had personal and subject matter jurisdiction, but should have stayed its hand pending determination of certain issues by the Interstate Commerce Commission); accord Northwest Airlines, Inc. v. County of Kent, Mich., — U.S. -, -n. 10, 114 S.Ct. 855, 863 n. 10, 127 L.Ed.2d 183 (1994)
*1108 (primary jurisdiction, unlike subject matter jurisdiction, is waivable); Gross Common Carrier, Inc. v. Booster Healthcare Corp., 51 F.3d 703, 706 (7th Cir.1995) (same); United States v. Henri, 828 F.2d 526, 528 (9th Cir.1987) (per curiam) (primary jurisdiction, despite the name, does not go to the jurisdictional power of the federal courts) (citing United States v. Bessemer & L.E. R.R. Co., 717 F.2d 593, 599 (D.C.Cir.1983)); Oasis Pet. Corp. v. United States Dep’t of Energy, 718 F.2d 1558, 1563 (Temp.Emer.Ct.App.1983) (citing United States v. Philadelphia Nat’l Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963)).
The majority acknowledges most of the above cases, but attempts to distinguish them on the basis that none of those eases “addressed the issue of the authority of a federal court to adjudicate a matter that a state legislature had placed within the exclusive domain of a state administrative agency.” Majority at 1106. This distinction, that a state legislature’s or court’s actions may divest the federal courts of subject matter jurisdiction where the same action by Congress would not, is unsupported by the cases the majority cites.
In the first ease relied on by the majority, United States v. Western Pac. R.R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), railroads sued the government in the Court of Claims to recover differences between the tariff rates they had been paid and the rates they believed were required on shipments of napalm bombs. The issue was whether the tariff for gasoline in drums or the higher tariff for incendiary bombs applied to the shipments. Neither party raised the issue of primary jurisdiction in the lower court, but the Supreme Court, on its own motion, considered the question of whether exclusive primary jurisdiction was vested in the Interstate Commerce Commission. Notably, the reason the Court gave for considering the issue sua sponte was comity, not subject matter jurisdiction:
Before this Court neither side has questioned the validity of the lower court’s views [regarding primary jurisdiction]. Nevertheless, because we regard the maintenance of a proper relationship between the courts and the Commission in matters affecting transportation policy to be of continuing public concern, we have been constrained to inquire into this aspect of the decision.
Id. at 63, 77 S.Ct. at 165. Its doctrinal discussion of primary jurisdiction was likewise not cast in jurisdictional terms:
The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. “Exhaustion” applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. “Primary jurisdiction,” on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a ease the judicial process is suspended pending referral of such issues to the administrative body for its views.
Id. at 63-64, 77 S.Ct. at 165 (citing General American Tank Car, 308 U.S. at 433, 60 S.Ct. at 331).[3] I therefore conclude that when the Western Pacific Court spoke of transferring “the power” to determine the parties’ relations from the court to the agency, see majority at 1106, it was speaking of a jurisprudential deference predicated on administrative rulemaking authority, not subject matter jurisdiction.
*1109 B.
Article III of the Constitution defines the outer limits of a federal district court’s subject matter jurisdiction. By statute, Congress may choose to grant jurisdiction short of those limits, for example, by requiring complete rather than minimal diversity, or by imposing jurisdictional amounts in diversity cases. Determining subject matter jurisdiction is not a particularly complex task; as the Supreme Court has stated, “[t]he Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it....” Finley v. United States, 490 U.S. 545, 548, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) (quoting The Mayor v. Cooper, 73 U.S. (6 Wall.) 247, 252, 18 L.Ed. 851 (1868)). Thus, if Congress wishes to confer exclusive jurisdiction on a federal administrative agency and divest the district courts of that jurisdiction, it would be within its constitutional power to do so, although it did not do so in the cases discussed above.
Under the Supremacy Clause, Congress may likewise confer exclusive primary jurisdiction on a federal court[4] or administrative agency and divest the state courts of what would otherwise be within their subject matter jurisdiction. This unremarkable principle explains the “exclusive” primary jurisdiction of the National Railway Adjustment Board found by the Supreme Court in two of the cases the majority relies upon. See Pennsylvania R.R. Co. v. Day, 360 U.S. 548, 552, 79 S.Ct. 1322, 1325, 3 L.Ed.2d 1422 (1959); Slocum v. Delaware, L. & W. R.R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 580, 94 L.Ed. 795 (1950).
A state legislature may also limit the jurisdiction of its own state’s courts by enacting a statute vesting exclusive primary jurisdiction in a state board or agency, subject of course to the strictures of state law and the due process requirements of the Fourteenth Amendment. See Create Bay, 34 F.3d at 1230 & n. 5 (dictum); Behrend v. Bell Tel. Co., 431 Pa. 63, 243 A2d 346, 347-48 (1968). Thus, I have no quarrel with the majority’s conclusion that a Pennsylvania state court would have no power to hear this claim.
C.
It does not follow, however, that a state may by statutory or decisional law restrict the subject matter jurisdiction of the federal courts. It is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the substantive right at issue is a creature of state law. Duchek v. Jacobi, 646 F.2d 415, 419 (9th Cir.1981); Markham v. City of Newport News, 292 F.2d 711, 713-16 (4th Cir.1961). That a state simply has no power to divest a federal court of its constitutionally or congressionally conferred subject matter jurisdiction has been settled law for nearly a century. See, e.g., Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43-44, 30 S.Ct. 10, 12, 54 L.Ed. 80 (1909); Land Title & Trust Co. v. Asphalt Co., 127 F. 1, 19 (3d Cir.1903) (dictum). Modern caselaw continues in full accord with the early cases. See Webb v. Tom Brown, Inc., 807 F.2d 783, 784 (9th Cir.1987); Dominion Nat’l Bank v. Olsen, 771 F.2d 108, 116 n. 2 (6th Cir.1985); Beach v. Owens-Corning Fiberglas Corp., 728 F.2d 407, 409 (7th Cir.), cert. denied, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); Mullen v. Academy Life Ins. Co., 705 F.2d 971, 975 (8th Cir.) (citing eases), cert. denied, 464 U.S. 827, 104 S.Ct. 101, 78 L.Ed.2d 105 (1983); Begay v. Kerr-McGee Corp., 682 F.2d 1311, 1315 (9th Cir.1982) (citing cases); Duchek, 646 F.2d at 419 & n. 4 (citing cases, quoting Railway Co. v. Whitton’s Adm’r, 80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571 (1871)); Greyhound Lines, Inc. v. Lexington State Bank & Trust Co., 604 F.2d 1151, 1154-55 (8th Cir.1979); Markham, 292 F.2d at 713-16; In re English Seafood (USA) Inc., 743 F.Supp. 281, 285-86 (D.Del.1990) (Roth, J.) (“a state statute that creates a remedy or type of proceeding cannot narrow the jurisdiction of the federal courts”) (quoting Land Title & Trust, 127 F. at 19-20); Codos v. National
*1110 Diagnostic Corp., 711 F.Supp. 75, 77-78 (E.D.N.Y.1989); Kanouse v. Westwood Obstetrical & Gynecological Assocs., 505 F.Supp. 129, 129 (D.N.J.1981) (Brotman, J.).
Moreover, this inviolability of federal subject matter jurisdiction to state modification applies even when the substantive right at issue is created solely by state law and is enforceable only before a state administrative agency. See Webb, 807 F.2d at 784 (exclusive remedy before state workers’ compensation fund); Beach, 728 F.2d 407 (subject matter jurisdiction exists even though state law purports to vest exclusive jurisdiction in Industrial Disputes Board); Begay, 682 F.2d at 1315-17 (workers’ compensation system); Liberty Mut. Ins. Co. v. K.A.T., Inc., 855 F.Supp. 980, 984-85 (N.D.Ind.1994) (failure to exhaust state administrative remedies); Jones v. National Union Fire Ins. Co., 664 F.Supp. 440, 441 (N.D.Ind.1987) (Industrial Disputes Board).
Recent opinions of this court have been somewhat less rigorous and detailed in then-analysis of subject matter jurisdiction than the caselaw set forth above, but are nevertheless in basic accord with it. In Edelson v. Soricelli, 610 F.2d 131 (3d Cir.1979), the issue was “whether a federal court may entertain a Pennsylvania medical malpractice claim under the diversity statute, 28 U.S.C. § 1332, before the claimant has initially taken recourse to the state Arbitration Panels for Health Care_” Id. at 132. Such recourse was “a condition precedent to entry into the state judicial system.” Id. at 134. In the two cases consolidated on appeal, “the district courts held that although claimants made the necessary averments for subject matter jurisdiction in the federal courts, exercise of diversity jurisdiction would be improper until the claims were arbitrated under the state arbitration procedure.” Id. at 133 (emphasis added) (footnote omitted). We affirmed, notwithstanding the ruling of one of the district courts that the Pennsylvania arbitration panel had exclusive primary jurisdiction. Id.
In the later case of Hamilton v. Roth, 624 F.2d 1204 (3d Cir.1980), a state prisoner sued prison doctors for cruel and unusual punishment under the Eighth Amendment. As a pendent claim under the doctrine of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), he also brought a claim for malpractice, but without submitting it to the Pennsylvania malpractice arbitration panel. Id. at 1205-06. In the concluding paragraph of our opinion, we did state that “the district court was without subject matter jurisdiction to hear Hamilton’s related medical malpractice claim.” 624 F.2d at 1212. This statement was not a part of the holding, but was at most an unguarded choice of words, because earlier in the opinion we stated:
There is no question that we have power under Gibbs to consider this claim. But Gibbs also requires that the federal court determine pendent claims in accordance with the applicable state law. Here, the applicable state law requires that a malpractice claim be submitted to arbitration before being considered in court. Thus, while a federal court has the power under the Gibbs test of pendent jurisdiction to hear a malpractice claim, it may exercise this power only after the claim has been submitted to arbitration. We have so held first in Edelson and now here.
Id. at 1210 n. 6.
Taken together in the light of the abundant caselaw reviewed above, Edelson and Hamilton teach that, while the district court had subject matter jurisdiction over Telecon-cepts’ third-party claim, it should have refrained from exercising it pending a decision in the proceedings before the PUC. See Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 736 (3d Cir.1983) (likening primary jurisdiction to abstention) (quoting Philadelphia Nat’l Bank, 374 U.S. at 353, 83 S.Ct. at 1736). This is so, not because the exclusive primary jurisdiction of the PUC deprived the district court of the subject matter jurisdiction conferred on it by the Constitution and Congress, but because the PUC’s exclusive primary jurisdiction is part of the substantive law of Pennsylvania, law which we are bound to apply under the Erie doctrine.[5] See Edelson, 610 F.2d at 135.
*1111 Many courts have followed this approach, refraining from exercising jurisdiction pending completion of appropriate administrative proceedings. In Webb, for example, the court opined that, rather than dismiss for lack of subject matter jurisdiction,
“[i]t is more accurate to characterize the reason for the dismissal of the complaint as the court’s belief that the complaint, as a matter of law, did not state a claim upon which relief could be granted because the exclusive remedy provision of [the state workers’ compensation statute] barred a common law negligence claim.”
807 F.2d at 784-85. Likewise, in Beach, the court opined:
Despite our ruling that the district court had jurisdiction to entertain this suit, we affirm the entry of summary judgment because Indiana has eliminated the cause of action asserted by the plaintiffs. The Indiana law vesting exclusive jurisdiction over disputes between employees and their employers in the disputes board operates to close state court doors to the plaintiffs. The state’s denial of a judicial remedy in this ease is a denial of the substantive right asserted by the plaintiffs. An employee or his representatives or kin may make no claim other than before the Industrial Disputes Board. Accordingly, the state courts have no jurisdiction over the plaintiffs’ claims, and the plaintiffs therefore have no claim to press in this federal action, which depends entirely upon state law.
728 F.2d at 409 (citing Woods v. Interstate Realty Co., 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949); Begay, 682 F.2d at 1316-19). Accord Begay, 682 F.2d at 1316-19 (case dismissed for failure to state any claim upon which the state court could grant relief); Markham, 292 F.2d at 717-18 (“Erie doctrine does not extend to matters of jurisdiction;” Erie held not to require nonex-ereise of jurisdiction under circumstances of case); Jones, 664 F.Supp. at 447 (case dismissed for failure to state a claim when relief could be obtained only from state industrial board); Kanouse, 505 F.Supp. at 132 (deferring exercise of jurisdiction pending completion of medical malpractice panel review).
D.
That brings me to the scope of the holding of Greate Bay, because if Greate Bay holds as the majority believes it does, our Internal Operating Procedure 9.1 compels us to follow it, regardless of whether I consider it juris-prudentially sound. In that case, a casino sued a gambler to enforce a settlement agreement concerning his gaming losses. The gambler counterclaimed, alleging that the casino allowed him to gamble although it knew he was intoxicated. On the counter-' claim, the jury found for the casino, and the gambler filed a motion for a new trial, which was denied. He then appealed that ruling, and the casino cross-appealed, arguing that the district court did not have jurisdiction because exclusive jurisdiction to order restitution was vested with the Casino Control Commission and that, therefore, “the district court should not have exercised jurisdiction over the counterclaim.” 34 F.3d at 1230 (emphases added).
We affirmed the denial of the new trial. Id. at 1235-37. The Greate Bay panel stated in a footnote that it was “obliged to examine the subject matter jurisdiction of the district court,” id. at 1230 n. 4, and it engaged in a detailed analysis of exclusive primary jurisdiction, holding that jurisdiction was not exclusive. Id. at 1235. Based on that determination, the panel did not need to, and indeed did not, engage in an analysis of the effect that a finding of exclusive primary jurisdiction would have on the district court’s power to grant restitution or even to hear the case. Once the court determined that the Commission did not have exclusive primary jurisdiction, it determined that the motion for new trial was properly denied by the district court.
I therefore conclude that footnote 4 of Greate Bay, which speaks in terms of the district court’s subject matter jurisdiction, is *1112 dictum and should not be followed here.[6] To the extent the majority relies on it for its holding, it places more weight on Greate Bay than it will bear, placing Greate Bay in conflict with our opinions in Edelson and Hamilton, the Supreme Court’s opinion in Reiter and the other cases discussed supra.
E.
In sum, I conclude that, although the district court has subject matter jurisdiction over Teleconcepts’ third-party claim, the exclusive primary jurisdiction of the PUC is part of the substantive law of Pennsylvania. Accordingly, to the extent that a Pennsylvania state court is unable to grant relief at this time, an Ane-bound federal court likewise may not ordinarily grant it.
II.
A.
I use “ordinarily” to refer to the posture in which this type of case usually comes before a district court — the situation in which one or more of the parties raises the issue of exclusive primary jurisdiction as a bar to relief in the federal forum. In such a case, the court should abstain from exercising its jurisdiction pending completion of proceedings before the administrative agency. This case, however, is different because exclusive primary jurisdiction was not litigated in the district court.
If exclusive primary jurisdiction did divest the district court’s subject matter jurisdiction, the majority would be undeniably correct in reaching the issue sua sponte for the first time on appeal. As I have already shown, subject matter jurisdiction is not implicated; thus, we would not normally reach the issue at this stage of the proceedings.
B.
In primary jurisdiction eases, however, we have discretion to consider on our own motion whether that doctrine applies. See Northwest Airlines, — U.S. at -n. 10, 114 S.Ct. at 863 n. 10; Western Pacific, 352 U.S. at 63, 77 S.Ct. at 165. In Western Pacific, the Supreme Court reached that issue because of the public concern over the proper relationship between the courts and the ICC. 352 U.S. at 63, 77 S.Ct. at 165. There, the courts’ interpretations of public tariffs had the potential to differ significantly from those of the agency charged with their regulation, with the potential of causing uncertainty and resulting in harm to either shippers or railroads. On the other hand, in Northwest Airlines, a case in which the Court did not consider the doctrine of primary jurisdiction, at issue were the rates a county airport authority charged airlines.
This case, like Western Pacific, involves public tariffs, which appears to weigh in favor of the majority’s decision to examine the primary jurisdiction issue. Discretion, of course, is exactly that — a choice of decisions, not a rule of law — so it should not be inferred that every ease involving a tariff requires the same result. In this case, however, I agree with the majority’s decision to reach the issue of exclusive primary jurisdiction (though not with its jurisdictional rationale).[7]
I therefore concur in part, and concur in the judgment.

. I would not discuss late service of MCX's complaint under former Fed.R-Civ.P. 4(j). Because the issue is adequately addressed by the majority's analysis under Rule 4(m). I find the Rule 4(j) analysis unnecessary to the result and would not reach it. Were this my only difference with the majority, however, I would not write separately.

. The majority’s holding in this regard is unclear. On the one hand, its reliance on Greate Bay and its pronouncement that we sua sponte must decide first if we have primary jurisdiction, indicate a belief that if exclusive primary jurisdiction lies in another forum, federal courts are deprived of subject matter jurisdiction. On the other hand, it later concludes that, "although the district court had jurisdiction over the third-party claim, the court erred in deciding the question of liability[,]” majority at 1106, and that "[t]he district court retains jurisdiction over this matter pending the liability determination by the PUC.” Id. at 1106. These statements are consistent with a holding that exclusive primary jurisdiction vested elsewhere does not automatically divest a federal court’s subject matter jurisdiction. Yet, if this is the majority's holding, it is difficult to understand why it concludes that we must (rather than, under these circumstances, we should) de *1108 termine whether the PUC has exclusive primary jurisdiction, an issue not litigated below.

. Indeed, the General American Tank Car Court was even more explicit in its pronouncement that the existence of primary jurisdiction elsewhere does not equate to a lack of subject matter jurisdiction in the federal courts:
We have said that the Commission insists the District Court was without jurisdiction of the cause. With this we do not agree. The action was an ordinary one in assumpsit on a written contract. The court had jurisdiction of the subject matter and of the parties....
308 U.S. at 432, 60 S.Ct. at 331.

. See, e.g., 28 U.S.C. §§ 1333 (admiralty, maritime and prize cases); 1334 (bankruptcy cases and proceedings); 1338 (patent, plant variety protection and copyright cases).

. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Erie, however, does *1111 not require us to apply state law on subject matter jurisdiction to determine an Article III court’s power to hear a case. That is governed exclusively by federal law. See Markham, 292 F.2d at 717-18.

. The Greate Bay court relied for its "duty” to examine the district court’s subject matter jurisdiction on Employers Ins. Of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir.1990). Crown Cork, however, was not a primary jurisdiction case, but was a garden-variety diversity suit in which we engaged, quite properly, in a sua sponte consideration of whether the requirements for diversity jurisdiction existed. Crown Cork, quite simply, supports neither Greate Bay’s pronouncement nor the majority’s reliance on it.

. I am troubled somewhat by the effect of our decision. Teleconcepts chose to assert its third-party claims in the federal proceeding rather than before the PUC, and Bell, which did not object, won below. Now, that third-party claim will be sent back before the PUC, where Bell will be forced to bear the costs of litigation and the risk of an adverse outcome. Nevertheless, we did ask the parties for supplemental briefing on primary jurisdiction, and Bell did not argue that the parties had waived the issue and that we should therefore not reach it. My conclusion might have been different had they made that argument.